# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

LOUIS GENUSA                                                    CIVIL ACTION

VERSUS                                                          NO. 13-794-JJB-RLB

ASBESTOS CORPORATION LIMITED,
ET AL.

## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

     **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

     Signed in Baton Rouge, Louisiana, on April 22, 2014.

**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUIS GENUSA                                           CIVIL ACTION

VERSUS                                                 NO. 13-794-JJB-RLB

ASBESTOS CORPORATION LIMITED,
ET AL.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on referral from the district judge of the plaintiff's motion to sever and remand.  This action was removed by International Longshoreman's Association ("ILA"), AFL-CIO, South Atlantic & Gulf Coast District, ILA, AFL-CIO, and Local 3033, ILA, AFL-CIO (collectively, the "Unions") after the defendant Baton Rouge Marine Contractors, Inc. ("BRMC") filed a Third Party Demand against the Unions.  (R. Doc. 1).  The Unions removed this action under 28 U.S.C. § 1441(c), which provides for removal of a civil action where federal and state law claims are joined.  The Unions allege that removal of the entire action is proper because BRMC's Third Party Demand raises federal questions under 28 U.S.C. § 1331.

Plaintiff Louis Genusa, Jr. ("Genusa") filed a motion to sever and remand under 28 U.S.C. § 1441(c)(2) on the basis that his tort claims do not raise any federal questions.  (R. Doc. 9).  Genusa's motion is opposed by some of the defendants in the original action on various grounds.  (R. Docs. 30, 31, 32, 33, 35, 36, 37, 49).  The Unions filed a motion in support of Genusa's motion.  (R. Doc. 34).  Genusa replied to the defendants' oppositions.  (R. Doc. 51).

I.      Background and Procedural History

Genusa worked as a longshoreman, truck loader, warehouse worker, and in other positions from 1963 to 1998 for various transportation companies at the Port of Baton Rouge in Port Allen, Louisiana.  He allegedly contracted malignant mesothelioma from asbestos exposure

1

while conducting such work.  On June 19, 2013, Genusa filed suit against the miners,

manufacturers, sellers, suppliers and distributors of asbestos products,[1] as well as his employers,

their executive owners, and owners of the premises on which he worked,[2] in the 18th Judicial

District Court, West Baton Rouge Parish, Louisiana.  (R. Doc. 1-2 at 18-30, "Petition").  The

following employer and premise defendants have submitted briefs regarding the pending motion

to remand:

- Baton Rouge Marine Contractors ("BRMC"), n/k/a Ports America Baton Rouge, Inc.
- Port of Greater Baton Rouge a/k/a Greater Baton Rouge Port Association ("GBRPA")
- SSA Gulf, Inc. f/k/a Ryan Walsh ("SSA/Ryan")
- Ramsay Scarlett & Company ("Ramsay")
- Louisiana Insurance Guaranty Association ("LIGA"), liability insurer for insolvent employer Louisiana Stevedores

In the Petition, Genusa alleges claims for negligence, failure to warn, strict liability, breach of

express and implied warranty, and negligent infliction of emotional distress based on Louisiana

law.  (R. Doc. 1-2 at 18-27).

On October 23, 2013, BRMC filed a Third Party Demand seeking contribution or

indemnity from the Unions on the theory that they breached contractual duties to warn Genusa

and BRMC of the dangers of asbestos exposure.  (R. Doc. 1-2 at 10-17, "TPD").  In the Third

Party Demand, BRMC alleges that the Unions had a "contractual relationship" with Genusa, and

in consideration for Genusa's dues, the Unions promised him better working conditions and to

promote his health.  (TPD, ¶ V).  BRMC further alleges that the Unions had a duty to warn

---

[1] The Manufacturer/Distributor defendants include Asbestos Corporation, Ltd., CSR LTD., f/k/a Colonial Sugar, South African Marine Corporation, Ltd., and Industrial Development Corporation of South Africa, Ltd.  (Petition, ¶ 2).  These defendants have not filed briefing in this action.

[2] The Employer/Premise defendants include Baton Rouge Marine Contractors n/k/a Ports America Baton Rouge, Inc.; Ralph Hill, executive Officer of BRMC; Michael "Buddy" Quade, Executive Officer of BRMC; SSA Gulf, Inc. f/k/a Ryan Walsh; Frank Beason, Jr., Executive Officer of Ryan Welch; Ramsay Scarlett & Company; Gerald Chustz, Executive Officer of Ramsay Scarlett; Ernest Levering III, Executive Officer of Ramsay Scarlett; Liberty Mutual Insurance Company; Port Of Greater Baton Rouge a/k/a Greater Baton Rouge Port Association; and Louisiana Insurance Guarantee Association.  (Petition, ¶ 2).

Genusa about the dangers of asbestos, a duty to warn BRMC about the dangers of asbestos, and a duty to protect Genusa's health and safety.  (TPD, ¶ V).  The Third Party Demand also includes allegations against McKoin Trucking Company, L.L.C. f/k/a  McKoin trucking Company, Inc. ("McKoin Trucking") for indemnity and contribution.  (TPD, ¶ VII).  BRMC alleges that McKoin Trucking exposed Genusa to asbestos cargo and is liable to both Genusa and BRMC "in the event BRMC is liable to plaintiff for any sum pursuant to the same theories of liability asserted against BRMC and other defendants."  (TPD, ¶¶ VII-X).

On November 12, 2013, the Unions timely removed the action under 28 U.S.C. § 1441(c).  (R. Doc. 1).  In the Notice of Removal, the Unions allege that BRMC's third-party demand requires interpretation of both collective bargaining agreements and labor organization constitutions under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  The Unions allege that Section 301(a) completely preempts BRMC's claims under state law, providing this court with federal question jurisdiction under 28 U.S.C. § 1331.

On December 16, 2013, Genusa filed a motion to sever and remand his state law claims in accordance with 28 U.S.C. § 1441(c)(2) on the ground that his claims are separate and independent from the third-party claims removed by the Unions and they do not raise any questions of federal law.  (R. Doc. 9).  The Unions filed a memorandum in support of severance and remand of Genusa's claims.  (R. Doc. 34).  Repeating their position in the Notice of Removal, the Unions argue that Genusa's claims are separate and independent from BRMC's third-party claims against them.

BRMC opposes Genusa's motion to sever and remand on the basis that Genusa's claims are not "separate and independent" from the third-party claims.  As discussed above, BRMC argues that the entire action should be remanded.  (R. Doc. 35).  GBRPA adopts the opposition

3

of BRMC, and further requests the court to defer on ruling on Genusa's motion to sever and remand until after consideration of BRMC's motion to remand the entire action. (R. Doc. 36). In reply, Genusa argues that BRMC wrongly asserts that its third-party demands are inseparable from Genusa's claims.

LIGA, SSA/Ryan, and Ramsay oppose Genusa's motion to sever and remand on the basis that the court should retain jurisdiction over Genusa's claims, which they argue falls under this court's admiralty jurisdiction and are governed by the procedures and remedies of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq*. In particular, LIGA argues that Genusa's employment with Louisiana Stevedores (for which LIGA is legal successor) occurred on vessels situated over navigable waters. LIGA argues that although Genusa's admiralty action was not independently removable, now that it has been removed, the court should exercise jurisdiction over Genusa's claims as they relate to his employment for Louisiana Stevedores. (R. Doc. 30-31). In the alternative, LIGA requests that the plaintiff's claims against it be dismissed prior to remand on the basis that the state court lacks subject matter jurisdiction over claims governed exclusively by the LHWCA. Similarly, SSA/Ryan opposes Genusa's motion to remand, relying on arguments found in its motion for partial summary judgment, which claims that the stevedore employers have immunity from Genusa's state tort claims under the LHWCA. (R. Doc. 32-33). Ramsay Scarlett joined in the opposition filed by SSA/Ryan. (R. Doc. 37, 49). In reply, Genusa argues that LHWCA exclusivity does not apply because (1) the LHWCA does not apply to pre-1972 land-based injuries sustained by longshoremen, (2) Genusa's state law tort claims accrued in the 1960s when he was first exposed, and (3) Genusa's work was not exclusively on floating vessels. (R. Doc. 51).

On December 19, 2013, the Unions moved to dismiss BRMC's Third Party Demand.  (R. Doc. 19, 20).  In response, on January 9, 2014, BRMC filed an Amended Third Party Demand that purportedly removes allegations that could be interpreted as giving rise to a federal question. (R. Doc. 45).  On January 13, 2014, BRMC filed a motion to remand the entire action based upon its allegations in its amended third-party complaint, which BRMC argues remove any "confusion" regarding whether there is a federal question under 28 U.S.C. § 1331.  (R. Doc. 48). Although the court is not currently addressing BRMC's motion to remand, the arguments presented in the briefing by BRMC and the Unions are relevant for determining whether the action was properly removed.

BRMC argues that the Unions improperly removed this action because its Third Party Demand alleges only state law contribution claims that do not require interpretation or application of Deep Sea Agreements, collective bargaining agreements, or labor organization constitutions, and therefore do not raise a federal question.  BRMC argues that under the well-pleaded complaint rule the affirmative defense of federal preemption does not create a federal question.  BRMC acknowledges, however, that the LMRA completely preempts state law and, accordingly, federal question jurisdiction is properly exercised where a defendant raises an affirmative defense of preemption under Section 301(a) of the LMRA.  Nevertheless, BRMC argues that complete preemption does not apply to its contribution claims against the Unions because they are based on an alleged breach of state-law duties owed by the Unions to Genusa. BRMC further claims that its amended Third Party Demand (R. Doc. 45) removes any and all allegations of contractual relationships that could arguably raise a federal question.  Accordingly, BRMC requests the court to exercise its discretion and remand for lack of subject matter jurisdiction under 28 U.S.C. § 1331.

In opposition, the Unions argue that the court has subject matter jurisdiction under 28 U.S.C. § 1331 because they have raised a defense under Section 301(a) of the LMRA, which completely preempts any state law action.  The Unions further argue that BRMC cannot defeat the proper removal of the action by amending away the basis for the court's subject matter jurisdiction.  Finally, the Unions argue that even as amended, BRMCs' Amended Third Party Demand states a claim under §301 of the LMRA and is preempted by the federal duty of fair representation.

## II.    Law & Analysis

### A.    Removal to Federal Court pursuant to 28 U.S.C. § 1441(c)(1)

#### 1.    Proper Removal by Third Party Defendants

Although not addressed by the parties, the Court must first determine whether the third party defendants may remove this action under 28 U.S.C. §1441.  Most courts have limited section (c) to removal only by defendants, not third-party defendants.  *See, e.g., Pulaski v. Curry*, 301 F.3d 456, 461 (6th Cir. 2002) ("we conclude that neither § 1441(a) nor § 1441(c) provides third-party defendants with the right to remove a case to federal court); *Lewis v. Windsor Door Co.*, 92 F.2d 729, 732-33 (8th Cir. 1991); *Thomas v. Shelton*, 740 F.2d 478, 487-88 (7th Cir. 1984).

The Fifth Circuit, however, follows a minority view, allowing third-party defendants to remove under subsection (c) under limited circumstances.  *See Carl Heck Engineers, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133, 135 (5th Cir. 1980) (superseded by statute on other grounds).  In the instant case, BRMC asserts in its Third Party Demand that it is "entitled to indemnity and/or contribution" from the third-party union defendants based on a "contractual relationship with plaintiff."  (TPD, ¶¶ IV-V).  Consistent with *Heck*, this third-party indemnity

claim based on a contractual obligation is removable by a third-party defendant in accordance with 28 U.S.C. § 1441(c).[3]

In contrast, BRMC's third-party "contribution and/or indemnity" claims against McKoin Trucking are not based on contractual obligations. BRMC alleges that McKoin Trucking exposed Genusa to asbestos cargo and is liable to both Genusa and BRMC "in the event BRMC is liable to plaintiff for any sum pursuant to the same theories of liability asserted against BRMC and other defendants." (TPD, ¶¶ VII-X). Because its third-party claims against McKoin Trucking are based on the same theories of liability asserted against BRMC by Genusa, these third-party claims against McKoin Trucking are not separate and independent from Genusa's claims. *See Noland v. Energy Resources Technology, Inc.*, No. 12-cv-330, 2013 WL 177446 (S.D. Tex. Jan. 16, 2013) (citing *In re Wilson Indus., Inc.*, 886 F.3d 93, 96 (5th Cir. 1989). Accordingly, the court will analyze whether to sever and remand BRMC's third-party claims against McKoin Trucking in this Report and Recommendation.

## 2. BRMC's Claims against the Unions arise under the laws of the United States.

This court has original subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nevertheless, because

---

[3] The "separate and independent" language in 28 U.S.C. § 1441, on which *Heck* was decided, was removed from Section 1441(c) in the 2011 amendments. The former version of Section 1441, in pertinent part, read as follows:

> (c) Whenever a *separate and independent* claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c) (version prior to Dec. 7, 2011 amendments) (emphasis added). None of the parties have questioned whether the analysis in *Heck* survives the 2011 amendments. *See Certain Underwriters at Lloyd's London v. Art Crafting, Inc.*, No. 12-5078, at *17 (E.D.N.Y. Jan. 10, 2014) (questioning whether the rationale for the minority view allowing third-party defendant removal under 28 U.S.C. § 1441(c) survives the 2011 amendments).

federal courts are courts of limited jurisdiction, it is presumed that a suit removed to federal court lies outside this limited jurisdiction.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  The party seeking removal bears the burden of demonstrating that a federal question exists.  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).  A federal question exists "if there appears on the face of the complaint some substantial, disputed question of federal law."  *In re Hot–Hed, Inc.*, 477 F.3d 320 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of the plaintiff's "well-pleaded complaint" as of the time of removal.  *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).  Because the plaintiff is the master of his complaint, even where both federal and state remedies are available on a given set of facts, there will be no basis for removal on federal question jurisdiction if the plaintiff elects in the state court petition to proceed exclusively under state law.  *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995).  Under the well-pleaded complaint rule, the defense of federal preemption does not create federal question jurisdiction.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328-29 (5th Cir. 2008) ("The well-pleaded complaint rule focuses on whether the plaintiff has affirmatively alleged a federal claim, thus providing a basis for federal jurisdiction; anticipated or potential defenses, including defenses based on federal pre-emption, do not provide a basis for federal question jurisdiction.") (citations omitted).

The complete preemption doctrine, however, creates a narrow exception to the well-pleaded complaint rule, allowing removal of an otherwise unremovable state court action where Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  *See Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir. 2000) (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  Unlike ordinary preemption, complete preemption is jurisdictional in nature, and "[a]s such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims. . . ." *Johnson*, 214 F.3d at 632 (quoting *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir. 1999)).

Section 301 of the LMRA completely preempts disputes arising out of collective bargaining agreements.  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 22-24 (1983) (citing *Avco Corp. v. Machinists*, 390 U.S. 557 (1968)).  In determining whether a state tort claim is preempted by Section 301, the court must determine whether the tort action "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).  State tort law is preempted by Section 301 of the LMRA if it "purports to define the meaning of the contractual relationship." *Id*.  In other words, a tort claim brought under state law is preempted if the application of state law "requires the interpretation of a collective bargaining agreement."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).  Accordingly, the court must determine whether BRMC's third-party claims arising out of work-place safety are "inextricably intertwined" with the collective bargaining agreement, and therefore, preempted under Section 301 of the LMRA.  If

BRMC's third-party claims require an interpretation of the collective bargaining agreement, the Unions' removal of this action was proper and the court has subject-matter jurisdiction under the doctrine of complete preemption.

In *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851 (1987), a Union member claimed that her union had breached its duty to provide the plaintiff with a safe workplace.  The union member alleged that "pursuant to contracts and agreements entered into by and between the union and Florida Power," and "pursuant to the relationship by and between" the union and the union member, the union owed her a duty to ensure she "would not be required or allowed to take undue risks in the performance of her duties which were not commensurate with her training and experience."  *Hechler*, 481 U.S. at 853.  The Supreme Court concluded that because the plaintiff's state-law negligence claim was based on the union member's allegation "that the union owed a duty of care to provide her with a safe workplace," and the union could assume such a duty through a contractual arrangement, questions of contract interpretation would underlie any finding of tort liability.  *Id*. at 860.  Because the claims required an interpretation of the union bargaining agreements to determine whether such a duty existed, Section 301 of the LMRA preempted the union member's claims and therefore removal was proper.  *Id*. at 862.

Similarly, in *United Steelworkers v. Rawson*, 495 U.S. 362 (1990), the plaintiffs brought wrongful death claims on behalf of union employees killed in a mining accident.  The plaintiffs alleged that the deaths were caused by the fraudulent and negligent acts of the union in negligently performing mine inspections it had agreed to conduct, inadequately training safety committee members on safety issues, and failing to uncover obvious and discoverable deficiencies in mine safety.  *Id*. at 370.  The Supreme Court held that "[i]f the Union failed to perform a duty on connection with inspection, it was a duty arising out of the collective-

bargaining agreement signed by the Union as the bargaining agent for the miners," which was clearly governed by federal law. *Id*. at 374-75.

Here, BRMC seeks contribution or indemnification from the Unions on the basis that the Unions breached a contractual duty to warn both Genusa and BRMC of the dangers of asbestos. The court must interpret the collective bargaining agreement between BRMC and the Unions to determine whether such a duty existed. *Rawson*, 495 at 369-70; *Hechler*, 481 U.S. at 853. Furthermore, to the extent BRMC alleges that this "contractual relationship" arises out of the union constitutions, those claims are preempted under Section 301 as well because union constitutions are contracts within the meaning of the LMRA. *See Woodell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991).

In arguing that its state law claims are not preempted under the LMRA, BRMC relies primarily on a Fifth Circuit decision involving an action by an employee against his employer under La. Rev. Stat. § 23:13. *See McKnight v. Dresser*, 676 F.3d 426, 431 (5th Cir. 2012). The Fifth Circuit held that Louisiana employers have an independent state-law duty to ensure workplace safety separate from any duty imposed on the employers by a collective bargaining agreement. Accordingly, the employers could not remove the action on the basis of complete preemption under Section 301 of the LMRA. Similarly, in *Miles v. Melrose*, 882 F.2d 976 (5th Cir. 1989), the Fifth Circuit held that the union had a duty under general maritime law to warn an employer about the violent propensities of a union member who stabbed a co-worker. *Id*. at 991. Because general maritime law created a duty for the union to warn the employer, there was no need for interpreting the collective bargaining agreement, and, accordingly, there was no complete preemption under Section 301 of the LMRA. *Id*. The facts of neither *McKnight* nor

*Miles* are applicable to this action because BRMC has alleged that the source of the Unions' duties is contractual in nature.[4]

Based on the foregoing, the Union's removal of this action under 28 U.S.C. § 1441(c) was proper, as the court has federal question jurisdiction over BRMC's claims under 28 U.S.C. § 1331.

**B.      Severance and Remand pursuant to 28 U.S.C. § 1441(c)(2)**

Genusa moves the court to sever its claims from the Third Party Demand and remand Genusa's claims pursuant to 28 U.S.C. § 1441(c)(2).  The removal statute, in pertinent part, provides the following with regard to the removal of actions with both federal law and state law claims:

> (c) Joinder of Federal law claims and State law claims.—(1) If a civil action includes—
>
> > (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
> >
> > (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. . . .

28 U.S.C. § 1441(c).  To the extent Genusa's claims are not "within the original or supplemental jurisdiction of the district court" or "made nonremovable by statute," the court must sever those claims and remand them to state court under § 1441(c)(2).  The issue before the court, therefore,

---

[4] Following the district judge's ruling on the instant motion to remand, the undersigned will submit a Report and Recommendation regarding BRMC's motion to remand (R. Doc. 48) and analyze whether the Amended Third Party Demand (R. Doc. 45) removes the basis for this court's jurisdiction, and, if so, whether discretionary remand of the remaining claims is warranted.  *See Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994) (propriety of removal is determined by looking to the complaint as it existed at the time removal was filed, regardless of post-removal amendments).

is whether and to what extent Genusa's claims: (1) are not within the court's original jurisdiction; (2) are not within the court's supplemental jurisdiction; or (3) are claims that have been made unremovable by statute.  28 U.S.C. § 1441(c)(1)(B).

### 1.   Original Jurisdiction

### (a)   28 U.S.C. § 1333 (Admiralty Jurisdiction)

Federal district courts have original jurisdiction over any "civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).[5]  LIGA is the only defendant to characterize this action, albeit fleetingly, as an "admiralty" action in its opposition to Genusa's motion to sever and remand. (R. Doc. 31 at 2).[6]  Historically, admiralty jurisdiction would depend solely on whether the alleged tort occurred on navigable waters.  *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253 (1972).  In *Executive Jet Aviation*, the court concluded that "there has existed over the years a judicial, legislative, and scholarly recognition that, in determining whether there is admiralty jurisdiction over a particular tort or class of torts, reliance on the relationship of the wrong to traditional maritime activity is often more sensible and more consonant with the purposes of maritime law than is a purely mechanical application of the locality test."  *Id*. at 261. Applying this inquiry into the "relationship of the wrong to traditional maritime activity," the Supreme Court concluded that "there is no federal admiralty jurisdiction over aviation tort claims arising from flights by land-based aircraft between points within the continental United States." *Id*. at 274.  The Supreme Court later extended this inquiry into traditional maritime activity into

---

[5] Federal district courts have exclusive jurisdiction over certain admiralty actions, such as those brought in rem, for which state law does not provide a remedy.  *See In re Dutile*, 935 F.2d 61 (1991).  This court's exclusive jurisdiction under 28 U.S.C. § 1333 is not implicated by Genusa's claims.
[6] SSA/Ryan and Ramsay focus only the alleged federal nature of this claim based on LHWRA preemption.  (R. Docs. 33, 37).  BRMC and GBRPA focus on arguments that Genusa's claims are not "separate and independent" from BRMC's third-party claims.  (R. Docs. 35, 36)

contexts not involving aircraft.  *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)

("[C]omplaint alleging a collision between two vessels on navigable waters properly states a

claim within the admiralty jurisdiction of the federal courts."

Accordingly, to determine whether it has original jurisdiction pursuant to 28 U.S.C. §

1333, a federal district court must now inquire into both whether the location of the injury

occurred on navigable waters or whether an injury suffered on land was caused by a vessel on

navigable water (the "locality" test) and whether the alleged harms had a significant relationship

to traditional maritime activities (the "connection" test).  *Grubart, Inc. v. Great Lakes Dredge &*

*Dock Co.*, 513 U.S. 527, 534 (1995).  The Supreme Court has provided an exclusive two-

pronged inquiry for determining whether the connection test is satisfied: (1) the court must first

"assess the general features of the type of incident involved to determine whether the incident

has a potentially disruptive impact on maritime commerce" and (2) the court must also

"determine whether the general character of the activity giving rise to the incident shows a

substantial relationship to traditional maritime activity."  *Id.* (internal quotations and citations

removed) (quoting *Sisson v. Ruby*, 497 U.S. 358, 363-65 (1990)).

Here, Genusa's claims meet the locality test, at least in part.  The locality test looks to

"whether the tort occurred on navigable water or whether injury suffered on land was caused by

a vessel on navigable water."  *See Abt v. Dickson Equipment Co., Inc.*, 251 Fed. App'x (5th Cir.

2007) (quoting *Grubart*, 513 U.S. at 534).  Genusa does not dispute that he did his stevedoring

work both on floating vessels on the Mississippi River, a navigable waterway, and on the land.

(*See* R. Doc. 51 at 9-10).  Although it is not clear whether Genusa was on "navigable water"

when he was first exposed to asbestos, because Genusa alleges that at least some of his exposure

to asbestos occurred on navigable waters, the court concludes the locality test has been satisfied

14

at least with regard to any alleged exposures suffered on navigable waters. *See Coleman v. Slade Towing Co.*, 759 F. Supp. 1209, 1213 (S.D. Miss. 1991); *see also Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011) ("[I]n the case of asbestos-related disease arising from work on or around ships, the Court concludes that the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters.").

The court has more difficulty, however, determining that Genusa's claims have a significant relationship to traditional maritime activity and therefore satisfy the connection test. In an action decided before *Grubart*, the Fifth Circuit outlined "four factors to be considered in determining the existence of a substantial maritime relationship: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." *Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634, 639 (5th Cir. 1985) (citing *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973)). Based upon these *Kelley* factors, the Fifth Circuit concluded that an asbestos insulation installer's claims against asbestos manufacturers did not bear a significant relationship to traditional maritime activities, even though approximately 60% of the plaintiff's work over four decades had been done insulating ships in shipyards, dry dock areas, and on navigable waters. Consistent with this analysis, a similar conclusion would be supported in the current case. The *Grubart* decision, however, expressly abrogates the use of the four factors announced in *Kelley* for determining whether the connection test was satisfied. *Grubart*, 513 U.S. at 544-45; *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995). By extension, the holding in *Woessner* is put in question.

More recent decisions outside of this Circuit have determined that the *Sisson/Grubart* factors for the connection test are satisfied in asbestos actions where the plaintiffs performed a

substantial or primary portion of their work on navigable waters or on dry-docked ships. *See*, *e.g.*, *Carasug v. Crane Co.*, 956 F. Supp. 2d 1178 (D. Haw. 2013) (asbestos claims by pipefitter and nuclear engineer who performed 75% of his work on dry-docked ships met both prongs of connection test); *Conner*, 799 F. Supp. 2d at 468-69 (asbestos claims by Navy sailors who spend the bulk of their time on ships met both prongs of connection test). The court in *Conner* also held, however, that the work of predominately land-based shipyard workers did not have a potentially disruptive impact on maritime commerce and, accordingly, lacked a necessary component of the connection test resulting in a conclusion that maritime jurisdiction did not apply. *See Conner*, 799 F. Supp. 2d at 469.

The Petition in this matter does not allege that Genusa performed any work on ships on navigable waters or drydocks:

> Plaintiff worked from 1963 until retirement in 1988 for various transportation companies at the Port of Baton Rouge in Port Allen, Louisiana, located in the Parish of West Baton Rouge. He worked as a longshoreman, truck loader, warehouse worker and other positions. Throughout this time period he was injuriously exposed to asbestos dust from cargos, repair operations, product inspections, sack sewing and repair, and truck loading, as well as from asbestos-containing insulation on the premises and various pieces of heavy equipment. He also worked at the Sharp Station Warehouse in the City of Baton Rouge where he also handled asbestos. During this time Plaintiff was required to unload trucks and load rail cars with asbestos which was packaged and packed in a manner that was inherently unsafe resulting in maximal dust exposures to Plaintiff.

(Petition, ¶ 3). At a video deposition, however, Genusa stated that he unloaded ships while working with SSA/Ryan and Louisiana Stevedores. (R. Doc. 33-1 at 3-5). The court must decide, therefore, whether injuries to longshoremen who remove cargo from docked ships are likely to disrupt maritime commerce.

The court finds that the reasoning in *Conner*, which refused to find admiralty jurisdiction to asbestos claims raised by a predominately land-based worker, to be persuasive. "[S]uch workers are more removed from maritime commerce" and "the prospect of injuries to

predominantly land-based workers is less likely to disrupt maritime commerce" because such workers are not necessary for ships to operate on the navigable waters. *See Conner*, 799 F. Supp. 2d at 468. Accordingly, the court finds that it does not have original admiralty jurisdiction over Genusa's claims under 28 U.S.C. § 1333.

**(b)      Longshore and Harbor Workers' Compensation Act**

The defendants also suggest Genusa's claims raise issues of federal law that would provide this court with original jurisdiction based upon LHWCA exclusivity under 33 U.S.C. § 905(a). The Fifth Circuit has foreclosed the argument that this court has federal question jurisdiction under 28 U.S.C. § 1331 based on a theory of complete preemption under the LHWCA. *See Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157, 1164-65 (5th Cir. 1989) (doctrine of complete preemption does not apply to claims under the LHWCA); *see also Abt. v. Dickson Equipment Co., Inc.*, No. G-06-129 (S.D. Tex. June 22, 2006) ("Jurisdiction does not arise under the Longshore and Harbor Workers' Compensation Act ("LHWCA") because § 905(b) cannot be used as a vehicle for invoking the Court's admiralty and maritime jurisdiction . . . .").

The arguments raised by LIGA and SSA/Ryan regarding the application of federal law to Genusa's claim turn on statutory changes to the LHWCA. Prior to 1972, the LHWCA only applied to injuries on the navigable waters of the United States or on dry docks. The 1972 amendments expanded LHWCA coverage to include injuries occurring on "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903. The Louisiana Supreme Court has interpreted this grant of LHCWA coverage as providing concurrent jurisdiction over "land-based" claims added by the 1972 amendments. *See*

17

*Poche v. Avondale Shipyards, Inc.*, 339 So.2d 1212 (La. 1976).  Accordingly, if a worker has a land-based injury covered by the 33 U.S.C. § 903, he or she may still chose to pursue remedies under Louisiana law in lieu of the LHWCA.  *Id.*  Because Genusa's first alleged exposure to asbestos occurred in the 1960s, the parties dispute whether Genusa's claims are governed under the LHWCA based upon the changes in the 1972 amendments.   This dispute does not address whether Genusa's claims invoke the court's admiralty jurisdiction under the locality and connection tests discussed in *Sisson* and *Grubart*.

LIGA, SSA/Ryan, and Ramsay also suggest that now that the case is in this court, Genusa's claims against them should be dismissed rather than remanded on the basis that both this court and the state court lack jurisdiction in light of their LHWCA preemption defenses. These defendants rely on a Fourth Circuit opinion in which the plaintiff had (1) first filed a protective worker's compensation claim with the Department of Labor under the LHWCA and (2) then filed a negligence suit in Maryland state court under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.  See CSX Transportation, Inc. v. Shives,* 151 F.3d 164, 171 (4th Cir. 1998).  In *Shives*, the defendants removed the claims on the basis that the plaintiff "was engaged in maritime employment and therefore entitled only to workers compensation under the LHWCA" and sought to dismiss the action so that the administrative claim could proceed before the Department of Labor.  *Id.* at 166.  In determining that removal was improper under the FELA, the court determined that the plaintiff was engaged in "maritime employment" as defined by the LHWCA and that his negligence claims were covered by the LHWCA.  Because the plaintiff had already filed an administrative proceeding before the Department of Labor, neither the federal district court nor the state court had jurisdiction over the plaintiff's negligence claims

under 33 U.S.C. § 921.  Accordingly, the Fourth Circuit concluded that the district court should

not have remanded the action, but should have dismissed it altogether.

Here, Genusa has not sought recovery under the LHWCA by filing a protective worker's

compensation claim with the Department of Labor.  Instead, Genusa has brought tort claims in

Louisiana state court and the defendants have raised preemption defenses under the LHWCA.

As stated above, the Fifth Circuit has held that the defense of preemption under the LHWCA

does not provide this court with original jurisdiction.  *See Aaron*, 876 F.2d 1157.[7]  Even if this

case was in the same procedural posture as *Shives*, the Fifth Circuit would require the court to

remand the improperly removed claims even though the state court lacks jurisdiction.  *See In Re

Dutile*, 935 F.2d at 63.  The state court would then have to dismiss the remanded action if the

plaintiff attempted to pursue it in state court.  *See id*. at 63 n.2.

In conclusion, the court does not have jurisdiction over Genusa's claims under the

LHWCA and there is no basis preventing the court from remanding Genusa's claims to the state

court, which has jurisdiction over Genusa's claims.

### 2.    Supplemental Jurisdiction under 28 U.S.C. § 1367

As discussed above, the court has original jurisdiction over the BRMC's claims against

the Unions under 28 U.S.C. § 1331.  The court will, therefore, "have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction

that they form part of the same case or controversy under Article III of the United States

Constitution."  28 U.S.C. § 1367.  *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349

(1988) ("[A] federal court has jurisdiction over an entire action, including state-law claims,

whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus

---

[7] Similarly, the *Shives* decision has been interpreted as precluding a theory of removal based on complete
preemption under the LHWCA.  *See Nordan v. Blackwater Security Consulting, LLC*, 382 F. Supp. 2d
801, 810-811 (E.D.N.C. 2005).

of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)) (alteration in original)).

The parties have not directly briefed whether the court has supplemental jurisdiction over Genusa's claims.[8]  Genusa filed suit against various manufactures, employers, and premises owners after developing mesothelioma, purportedly caused by his occupational exposure to asbestos while working at the Port of Baton Rouge.  The Third Party Demand asserts indemnity and contribution from the Unions based upon certain contractual agreements, namely the collective bargaining agreements and the union constitutions.  *See Carl Heck Engineers, Inc.*, 622 F.2d at 136 (where a third-party demand seeks contractual indemnity separate from the underlying obligation owed by the defendant to the plaintiff, that claim is separate and independent from the plaintiff's claim).  The Fifth Circuit has found that the exercise of supplemental jurisdiction over contractual indemnity claims is proper where made by the plaintiff.  *See*, *e.g.*, *Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 434 (5th Cir. 2005) (where district court had federal question jurisdiction when plaintiff's action commenced, it also had supplemental jurisdiction over plaintiff's contractual indemnity claims, even if the federal claims later ceased to present a viable theory of recovery).  But the basis of this court's original jurisdiction is the application of the complete preemption doctrine under the LMRA to third-party claims.  The court is, therefore, in a procedural posture of having properly removed third-party claims for indemnity and contribution before it, but no original jurisdiction over the

---

[8] Genusa argues that because its claims are "separate and independent" from the third-party claims brought by BRMC against the Unions, its claims must be severed and remanded to the state court.  (R. Doc. 9).  In their Notice of Removal and subsequent briefing, the Unions support severance and remand of Genusa's claims on the same basis.  (R. Docs. 1, 34).  Genusa also argues that if this court has supplemental jurisdiction over its claims, it should nevertheless remand the action under 28 U.S.C. § 1367(c).  (R. Doc. 9-1 at 7-9).   Furthermore, BRMC opposes Genusa's motion to sever and remand by relying on a "separate and independent" analysis.  (R. Doc. 35).

underlying tort action.  This action, therefore, is distinguishable from the action where the court exercises supplemental jurisdiction over third-party claims.

Based on the procedural posture of this action, and the Fifth Circuit's holding in *Heck*, the court finds no basis for exercising supplemental jurisdiction over any of Genusa's claims or BRMC's third-party claims against McKoin Trucking.  The Unions removed this action under 28 U.S.C. § 1441(c)(1), which presupposes that they also removed other claims "not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute."  28 U.S.C. § 1441(c)(1)(B).  This also carries certain significant procedural ramifications, in that a removal under § 1441(c)(2) only requires defendants against whom "a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of [28 U.S.C. § 1331]" to join in or consent to the removal.  28 U.S.C. § 1441(c)(2); *see also Henry v. Independent American Sav. Ass'n.*, 857 F.2d 995, 999 (5th Cir. 1988) (former version of 28 U.S.C. § 1441(c) only requires consent of defendants whose claims are "separate and independent" from the claims brought against the other defendants).  The only parties who joined in or consented to the removal are the Unions.  (R. Doc. 1 at 3).

The Fifth Circuit has not decided whether the "separate and independent" analysis in *Heck* survives in the context of determining whether to sever and remand claims for lack of original or subject matter jurisdiction under § 1441(c).  Without further guidance from the Fifth Circuit regarding the impact of the 2011 amendments on the removal of third-party claims under § 1441(c), and in the absence of any challenge to the removal of this action under § 1441(c) as opposed to § 1441(a), the court follows the reasoning in *Heck.  See Carl Heck Engineers, Inc.*, 622 F.2d 133.  The court lacks supplemental jurisdiction over BRMC's third-party claims against the Unions because they are separate and independent from Genusa's claims and BRMC's third-

21

party claims against McKoin Trucking.  *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 354, (1988) (interpreting former version of 28 U.S.C. § 1441(c) as "not directly applicable to suits involving pendent claims, because pendent claims are not 'separate and independent' within the meaning of the removal statute."); *Certain Underwriters at Lloyd's, London & Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 & No. F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 579 (5th Cir. 2006) (finding that claim for which court has original jurisdiction is "separate and independent" from claim based on state law precludes an exercise of supplemental jurisdiction); *see also Lanford v. Prince George's Cnty., MD*, 175 F. Supp. 2d 797, 803 (D. Md. 2001) ("Because the claims against [certain defendant] cannot properly be addressed in federal court under supplemental jurisdiction, they are before the court only because Defendants may remove an action containing a separate and independent claim under 28 U.S.C. § 1441(c).").

If the district judge finds supplemental jurisdiction over this action under 28 U.S.C. § 1367(a), the undersigned nevertheless recommends remanding this action pursuant to 28 U.S.C. § 1367(c).  In *Crocker v. Borden*, 852 F. Supp. 1322, 1329-30 (E.D. La. 1994), the court faced a similar procedural posture as in the instant action.  In *Crocker*, workers brought state law claims against various defendants arising out of alleged asbestos exposure at Avondale Shipyards. Some of the defendants brought a third-party contribution action against Westinghouse Electric Corporation, the manufacturer of marine turbines for the U.S. Navy, on the theory that the plaintiffs' exposure to asbestos in the marine turbines contributed to their damages. Westinghouse removed the entire action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  The plaintiffs sought severance and remand of the claims in their main demand, as they had not asserted any claims against Westinghouse.  The court found that it had supplemental

jurisdiction over the plaintiffs' main demand, but then concluded that it should decline supplemental jurisdiction under 28 U.S.C. § 1367(c). *Crocker*, 852 F. Supp. at 1329-30.

In determining whether to exercise its supplemental jurisdiction over the plaintiffs' claims, the *Crocker* court considered the fact that the plaintiffs had trial dates pending in state court for nearly three years and a trial date had been set for approximately one month from the date of the ruling. *Id*. at 1330. Furthermore, none of the plaintiffs had asserted claims against the third-party defendant, Westinghouse, which had removed the action. *Id*. Despite opposition from Westinghouse, after considering "the policies of judicial economy, convenience, and fairness to the parties," the court severed and remanded the plaintiff's main claims and declined to exercise supplemental jurisdiction. *Id*. The court held that state claims substantially predominated over the lone federal claim under § 1367(c)(2) and fairness demanded remand for trial under § 1367(c)(4). *Id*.

Here, the removal occurred just over two months before the scheduled trial, Genusa chose to litigate in state court, the plaintiff's main demand asserts only state law claims, the lone federal claims are BRMC's third-party demands against the Unions, and the removing parties, the Unions, do not oppose severance and remand. Furthermore, Genusa suffers from malignant mesothelioma and would like to proceed with trial in state court, his chosen forum. (R. Doc. 9-1 at 1). Accordingly, if the court concludes that it has supplemental jurisdiction over Genusa's claims, it should nevertheless decline to exercise such jurisdiction and remand all of Genusa's claims to state court. Similarly, if the court concludes that it has supplemental jurisdiction over BRMC's third-party claims against McKoin Trucking, it should nevertheless decline to exercise such jurisdiction and remand those claims to state court.

### 3.       Removability of Admiralty Actions

The third set of claims that shall be remanded pursuant to 28 U.S.C. § 1441(c)(2) are those made non-removable by statute.  With no supporting analysis, LIGA states in its opposition to Genusa's motion to sever and remand that "an admiralty action filed in state court is not removable solely because it might have been filed in federal court. . . ." (R. Doc. 31 at 2).  The 2011 amendments to 28 U.S.C. § 1441 removed the statutory basis for the Fifth Circuit's conclusion (under the former version of the statute) that admiralty actions were non-removable. Accordingly, this court has held that the current version of 28 U.S.C. § 1441 allows removal of general maritime claims without requiring an additional source of federal jurisdiction.  *See Garza v. Phillips 66 Co.*, No. 13-742-SDD, 2014 WL 1330547 (M.D. La. Apr. 1, 2014); *Harrold v. Liberty Ins. Underwriters, Inc.*, No. 13-762-JJB-SC, 2014 WL 688984 (M.D. La. Feb. 20, 2014); *Bridges*, 2013 WL 6092803; *see also Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013); *but see Coronel v. AK Victory*, No. C13-2304JLR, 2014 WL 820270 (W.D. Wash. Feb. 28, 2014) (removal was improper under the current version of 28 U.S.C. § 1441 because district court did not have any original jurisdiction over seaman's general maritime claims in light of the "savings to suitors" clause).  Nevertheless, having concluded that Genusa's action does not evoke this court's admiralty jurisdiction, the court need not address severance and remand on the basis that Genusa's action was made non-removable by statute.

## III.    Conclusion

In conclusion, the Unions properly removed this action pursuant to 28 U.S.C. § 1441(c). Genusa's claims against the defendants, and BRMC's third-party claims against McKoin Trucking, are severable from BRMC's third-party claims against the Unions, and must be

remanded pursuant to 28 U.S.C. § 1441(c).  The undersigned will address BRMC's motion to remand (R. Doc. 48) in another Report and Recommendation.

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that Genusa's motion to sever and remand (R. Doc. 9) be **GRANTED.**  Genusa's claims against the defendants, and BRMC's third-party claims against McKoin Trucking, should be severed from BRMC's third-party claims against the Unions and remanded to the 18th Judicial District Court, West Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on April 22, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**